# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| CHRISTY R. LILES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 10-1149-CV-W-NKL-SSA ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## ORDER

Plaintiff Christy Liles challenges the Social Security Commissioner's denial of her claim of disability and disability insurance benefits. This lawsuit involves an application for supplemental security income benefits, under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381, *et. seq*.

Liles argues that the ALJ did not properly cite relevant evidence for his conclusions as required by Social Security Ruling 96-8P, and that the ALJ did not properly consider third-party testimony or Liles's testimony about limitations on her dominant left hand. The Court finds the ALJ's decision procedurally deficient, but finds the error harmless because Liles has failed to point to evidence on the record that creates a question whether she is disabled under the Act.

**I.  Factual Background**

The complete facts and arguments are presented in the parties' briefs and will be

duplicated here only to the extent necessary.[1] In applying for disability benefits, Liles alleged she was disabled due to a back injury when she had fallen eight years previous and broken two of her vertebrae. She also said that she had diabetes that caused pain in her extremities, and that she had broken her hand two years before the hearing. She testified she had to lie down every hour to relieve her back pain. Liles had past relevant work as a cashier in a convenience store.

At Liles's hearing before the ALJ, Dr. Ross, D.O., testified that the medical records established that the fracture in the lumbar region at L 3-4 was a chronic condition that had been present for quite some time. Dr. Ross also noted that Liles had a long history of hypertension and evidence of end organ damage present from at least 2002. The end organ damage involves the left ventricular hypertrophy. Liles also suffered from an enlarged heart. Dr. Ross testified that Liles had asthma and used an inhaler. Liles had also been treated for elevated blood sugars.

Dr. Ross opined that Liles would be able to lift 20 pounds occasionally, 10 pounds frequently and could stand or walk two hours in an eight-hour day. Additionally, Liles could sit six hours in an eight-hour day. Due to Liles's allegations of pain and subjective findings of reduced grip strength, Dr. Ross would reduce Liles's use of the left upper extremity.

Carrie Kasten, a friend of Liles's, submitted a third-party function report for the ALJ's consideration. Kasten wrote that Liles could engage in necessary shopping, prepare

---

[1] Portions of the parties' briefs are adopted without quotation designated.

basic meals, and do limited laundry when her pain was not too bad. On some days, Liles could not get out of bed because of pain. Liles could walk for ten minutes before having to stop.

Liles testified that her back was injured after a fall in 2001. Medical records from that time show that she had fractures of the right transverse process in two of her lumbar vertebrae, and possibly in a third. She was encouraged to move around while still at the hospital, and was released after three days.

Emergency room records from October 24, 2006, show that Liles reported falling on her hand a few weeks previous, but x-rays revealed no fracture or other problem.

Ronald Zipper, D.O., an orthopedic surgeon, performed two consultative examinations, on June 14, 2007, and on January 29, 2009. During the first examination, Liles told the doctor that she had constant, excruciating neck pain; that the pain was at a level of ten on a ten-point scale "at worst and best." She also was wearing a wrist splint. During the examination Liles had normal strength and range of motion. Sensation was generally normal, but the doctor emphasized that Liles claimed an "inappropriate" stocking-pattern of numbness over her left wrist and hand. The doctor concluded that Liles had no neurological reason for her neck complaints, "unexplained" immobilization of the left wrist, and subjective back pain with x-ray evidence of degenerative disc disease without radiculopathy.

Liles again complained of wrist pain in May 2008, telling doctors that she had broken her wrist a year previous. Liles complained of terrible pain on the underside of her wrist, but it was difficult for doctors to determine the location of the pain because she said even the

3

lightest contact caused the pain. Doctors instructed Liles to get occupational therapy to strengthen the hand, and told her to stop using her wrist splints. X-rays were normal.

Liles's second visit with Dr. Zipper was in early 2009. The doctor observed that Liles had nearly full or full strength. After his examination, Dr. Zipper noted that Liles continued to complain of neck pain but that she had no objective problem with her neck. He thought it was possible that Liles's complaints could be related to diabetic neuropathy. There were also no signs consistent with any nerve problems in her back, though he did note that his "mild" examination findings were consistent with degenerative disc disease and possible neuropathy. The doctor noted that Liles's left wrist fracture was healed.

After a hearing, the ALJ issued a decision on August 15, 2009, finding Liles was not disabled under the Act. The ALJ found Liles suffered from hypertension, diabetes, status post fracture of the left wrist, status post fractures of the lumbar spine at L3-L4, hepatitis C, asthma, and depression. However, the ALJ found Liles was not fully credible regarding the work-related limitations she alleged. He found Liles could perform sedentary work with limited use of her dominant left hand. Based on the testimony of a vocational expert, the ALJ concluded Liles retained the ability to perform work as a telephone solicitor, credit card processor, office helper, electronics assembler, data processor, and pharmaceutical packer.

## II. Discussion

In reviewing a denial of disability benefits, this Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). Liles argues that the ALJ's determination of Liles's

residual functional capacity is deficient on procedural grounds for failure to describe the specific evidence supporting his conclusions. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7 (July 2, 1996). ALJs are bound by Social Security Rulings. *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990). But an ALJ's "arguable deficiency in opinion-writing technique" does not always require remand when it has no bearing on the outcome of the case. *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992).

Although the reasoning of the ALJ's decision is almost scant enough to require remand, it provides enough indication of the ALJ's rationale, coupled with a medical record particularly supportive of the ALJ's determination, to avoid remand in this instance. Under the "residual functional capacity" heading, the ALJ recounted testimony from both Liles and Liles's friend, Ms. Kasten, describing the range of Liles's activities and limitations. The ALJ appeared to believe this testimony with regard to the symptoms experienced by Liles, but questioned Liles's credibility in reporting their severity and disabling effects.

With regard to Liles's credibility, the ALJ explicitly stated: "It appears that the claimant may be exaggerating her symptoms in an attempt to obtain benefits." [Record at 14]. In that same paragraph, the ALJ mentioned that Liles missed several scheduled doctor's appointments, had a history of IV drug use, and claimed nerve root impingement in her back that was unsupported by medical evidence. The ALJ did not support any of these assertions with citations to the record or explain why they undermined Liles's credibility. But earlier

5

in his decision, the ALJ discussed Dr. Zipper's finding that there was no objective signs of nerve root impingement. The ALJ also discusses early in his decision records of normal x-rays of Liles's wrist despite her complaints of pain, and that her physicians recommended she stop wearing a wrist splint. This evidence satisfies the Court that the ALJ reviewed the relevant evidence and relied on substantial evidence in discounting Liles's credibility.

Although Liles argues that the ALJ did not properly cite specific evidence supporting his conclusion, Liles points to minimal evidence conflicting with that conclusion. Liles first appears to argue that although the ALJ considered and specifically referenced testimony by Ms. Kasten, that testimony does not support the ALJ's conclusion. The ALJ specifically recounted the major points of Ms. Kasten's testimony. Liles implies without explaining that this evidence is inconsistent with the ALJ finding Liles capable of sedentary work. The Court finds that this testimony reasonably supports the ALJ's determination, especially given the ALJ's reasonable discounting of Liles's subjective complaints of pain. To the extent Ms. Kasten's testimony contradicts the ALJ's finding, the Court assumes that the ALJ found her testimony discredited by the same lack of objective evidence used to discredit Liles's testimony. *See Lorenzen v. Chater*, 71 F.3d 316, 319 (8th Cir. 1995). This is especially true where, as here, Ms. Kasten's testimony presumably relied in part on subjective complaints of pain from Liles.

Liles also argues that the ALJ did not discuss Liles's testimony about the limitations of her dominant left hand and did not make a specific finding on the extent of her limitations. Although the ALJ did not discuss hand limitations in his analysis of Liles's residual

6

functional capacity, the ALJ noted he relied on the testimony of Dr. Ross, who did provide precise limitations on the record. Although ideally the ALJ would say that he adopted those findings as part of the residual functional capacity analysis, the rest of the ALJ's decision reasonably indicates that he did so and that this was reasonable. The ALJ provided other indications supporting his finding that Liles had residual functional capacity for sedentary work with "some limitation of the use of her dominant left hand." The ALJ earlier in his decision discussed Liles's 2006 and 2008 x-rays indicating that her wrist was normal. The ALJ also discussed how Liles's doctors counseled her to seek occupational therapy to increase hand strength and to discontinue use of her wrist splint. Liles has not provided any objective evidence of limitations in her wrist and the ALJ reasonably relied on evidence in the record to discount Liles's subjective complaints of disabling wrist pain.

The Court understands that the vagueness and brevity of the ALJ's decision made it difficult for Liles to prepare an appeal. But in order to justify the use of administrative resources for a remand, Liles needs to produce enough evidence from the record to create some question as to whether the ALJ's ultimate decision was correct. Liles has failed to do this, and remand is not appropriate in this case.

**III. Conclusion**

The ALJ's decision was supported by substantial evidence. Accordingly, it is hereby ORDERED that Christy Liles's Petition [Doc. # 4] is DENIED. The decision of the ALJ is AFFIRMED.

7

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: September 1, 2011
Jefferson City, Missouri